UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JEREMEY KAMAL,

                        Plaintiff,

            - against -

AARON HOPMAYER, sued in his individual
capacity, and JAMES JOHNSON, sued in his
individual capacity,

                        Defendants.
--------------------------------------------------------x

05 Cv. 8164 (CLB)

*Memorandum and Order*

Brieant, J.

      Before the Court for decision are motions for summary judgment to dismiss all claims

asserted by Plaintiff, pursuant to Rule 56.  Defendant Hopmayer  timely filed his motion for

summary judgment on September 5, 2006 (Doc. 12).  Defendant Johnson timely filed his motion

for summary judgment on September 6, 2006.  (Doc. 13). Opposition papers were submitted on

October 2, 2006, and reply papers were submitted October 11, 2006.[1]


      Plaintiff brought claims under 42 U.S.C. §1983 against Defendant Johnson for false

arrest in violation of his due process rights under the Fourteenth Amendment, and for illegal

seizure under the Fourth Amendment.  Plaintiff brought a claim under 42 U.S.C. §1983 against

Defendant Hopmayer for malicious prosecution in violation of the Fourth Amendment.  Plaintiff

also brought a claim against Defendant Hopmayer for subjecting Plaintiff to a "hostile

---

[1] Plaintiff withdrew his claims against Defendants Ganley and Toner, and the Court
dismissed all claims against those defendants, with prejudice, on October 13, 2006.

educational environment" on the basis of his race, national origin and religion and in retaliation for Plaintiff's exercise of his First Amendment right to free speech.  Plaintiff asserted this last claim under "Title VI of the Civil Rights Act of 1964 and the First Amendment, as made actionable by 42 U.S.C. §1983."

*Facts/ Background*

The following facts are assumed to be true for the purposes of this motion only.  Plaintiff attended Pine Bush High School from 2000 to 2003.  Plaintiff is of Iranian descent, and is "openly" Muslim.  During the 2002-03 school year, Plaintiff repeated tenth grade English class with teacher Bethany Ganley.

On September 11th, 2002, Plaintiff was one of several students who threw batteries at a stop sign from a school bus window.  He was called into Defendant Hopmayer's office upon arrival at the high school.  Plaintiff alleges that Hopmayer told him during this meeting that Hopmayer had "killed Persians" during his service in the first Gulf War, and stated his opinion that Plaintiff was disrespectful to this country.

Plaintiff also alleges that Hopmayer frequently visited Plaintiff's English class, which Ms. Ganley taught, and engaged with the class in discussions that had to do with Middle East politics rather than the class subject matter.  Plaintiff alleges that Defendant Hopmayer shared his views on the situation in Iraq, and made strong statements about men who did not serve in the military, saying that they "were not man enough."  These discussions made Plaintiff

2

uncomfortable. He expressed these concerns to Ganley, his father, and his fellow students. Plaintiff's father attempted to contact Hopmayer, and left him messages that were not returned by Hopmayer. (His calls were later returned by Assistant Superintendent Cooper.)

On February 7, 2003, Plaintiff got into a physical altercation with another student. The two had gotten into a verbal argument the preceding day on the school bus. One of the teachers who witnessed the fight brought Plaintiff to Hopmayer's office. Hopmayer suspended Plaintiff and said that he was lucky he was not being arrested. Hopmayer sent a notice of a five day suspension to Plaintiff's parents, and referred him to peer mediation. The Caucasian student with whom Plaintiff fought received a series of in-school detentions. Plaintiff refused to attend the peer mediation sessions, and because of this, Hopmayer would not allow him to return to school until March 14, 2003.

On March 4, the day peer mediation was to begin, Plaintiff's father called Superintendent Stark to discuss the school's treatment of his son. Assistant Superintendent Cooper also returned Plaintiff's father's call that day. Plaintiff's parents also met with Hopmayer and co-principal Mike Amsten on March 10, 2003, where they claim that Hopmayer "had been arrogant and talked down to them." The Kamals had several other conversations with Cooper in which they communicated their concern that Hopmayer was racially biased and treated their son unfairly.

*Plaintiff's Arrest*

On March 14, 2003, Plaintiff got off of the school bus with his friend, J.R.  Plaintiff

claims that within a few minutes, he was picked up at the stop and taken away by his father, though J.R. has testified that Plaintiff remained with J.R.  Soon after, J.R. threw at a passing school bus.  It is undisputed that a rock broke through a window of that bus, injuring at least one student.

On the following Monday, Defendant Johnson, who is a Town of Crawford police officer and Pine Bush High School Resource Officer (SRO), began investigating the rock-throwing incident.  Johnson took statements about the rock-throwing incident from students, including J.R.  J.R. handwrote a statement that he had thrown a rock, but that he did not see if Plaintiff had thrown a rock, because Plaintiff was behind him.  None of the students who witnessed the incident reported that Plaintiff threw the rock.  Johnson continued interviewing others, who were not witnesses to the incident, but who did implicate the Plaintiff in similar rock-throwing incidents in the past.  Defendant was out sick on that Monday, and neither Johnson nor anyone else questioned Plaintiff about the incident.  J.R. was charged with misdemeanor criminal assault charges.  The charges were later dropped in exchange for his agreement to pay restitution.

On March 19, 2003, Johnson came to Plaintiff's house and placed him under arrest for misdemeanor reckless endangerment, criminal mischief and assault.  He was handcuffed, taken to the police station and placed in a holding cell. He hired a criminal defense attorney and made four appearances in Town Court.  Charges were later dropped by the Orange County District attorney "in the interests of justice", and because J.R. has "exculpated" Plaintiff.  Plaintiff claims that he later became suicidal, was treated for mental health problems, and dropped out of high

4

school because of his distress over the incident.

The standard for summary judgment in this jurisdiction is so well known that no citation is necessary.  *See F.R.C.P. 56.*

*False Arrest Claim*

Plaintiff asserts the false arrest claim against Defendant Johnson only.  Defendant Johnson argues that he is entitled to summary judgment on the false arrest claim because he had probable cause, which is an absolute defense.  He argues in the alternative that he is entitled to summary judgment because he should be afforded qualified immunity.

Our Court of Appeals has held that "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  Probable cause exists where an officer makes an arrest based upon a good faith, reasonable reliance on information given to that officer from witnesses, even if that information is later found to be false.  *See Miloslavsky v. AES Eng'g Soc., Inc., 808 F.Supp. 351 (S.D.N.Y. 1992) aff'd, 993 F.2d 1534 (2d Cir. 1993).*

Defendant Johnson argues that he is entitled to a finding of probable cause, as a matter of law, because:

"Officer Johnson interviewed students who were passengers on the school bus, as well as various school administrators, all of whom identified the plaintiff as an alleged rock thrower.  In addition, upon request, all of the aforementioned individuals provided Officer Johnson with written statements attesting to the fact they possessed personal knowledge verifying that the plaintiff was involved in the subject rock throwing incident." (*Johnson Memorandum in Support at 5*).

Defendant Johnson cites no evidence in support of the above statement. His Rule 56.1 statement cites numerous "incident reports", "statements", and "documents" where students with personal knowledge identified the Plaintiff as a rock thrower.  However, the Court's examination of the record evidence reveals no such statements linking Plaintiff to the "subject rock throwing incident."  Paragraph 17 of Johnson's Rule 56.1 statement cites statements written by students B.B. and J.T., in which those students "contend they had personal knowledge of the incident and that the plaintiff... threw rocks at the bus." *Johnson's Rule 56.1 statement paragraph 17.* However, in neither of those statements do those students purport to have personal knowledge of the March 14 incident. The students who did have personal knowledge of the incident, J.R. and B.K., did not state that they had personal knowledge that Plaintiff threw a rock.  *See Exhibits S and T of Hopmayer's Notice of Motion*.  In addition, Johnson claims that he interviewed J.R., and that J.R.  "identified the plaintiff as having thrown a rock at the bus".  *Johnson's Rule 56.1 statement paragraph 18.*  However, the portion of Johnson's deposition cited contains no such assertions.  Johnson testified in other portions of his deposition that J.R. claimed not to have seen Plaintiff throw a rock.  *See Johnson Deposition, Page 28, lines 10-14.*

Johnson is mistaken when he asserts in his Memorandum of Law that "[t]he parties' version of the facts are not disputed..."  Plaintiff has presented evidence that on the day Defendant Johnson arrested Plaintiff, Johnson knew that: "(1) a single rock had hit the school bus window on March 14, 2003... (2) J.R. had admitted throwing a rock at the side of the school bus... (3) not a single witness identified plaintiff as having thrown a rock at the school bus." Counsel for Johnson appears to have either misidentified or misrepresented every piece of

evidence offered in support of his reasonable cause argument.  Since the evidence of the non-movant, in this case Plaintiff, is to be believed, and all justifiable inferences are to be drawn in his favor, the Court must deny Johnson's motion.  Based on the evidence, a reasonable juror could conclude that Defendant Johnson arrested Plaintiff without probable cause.

For the same reasons, the Court denies Defendant Johnson's motion on the basis of qualified immunity.  The defense of qualified immunity depends on the objective reasonableness of the officer's actions.  *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2nd Cir. 2003).  There is a factual dispute as to what information Defendant Johnson had at the time he arrested Plaintiff.  This information goes to his state of mind and the reasonableness of Defendant Johnson's actions.  Viewing the facts in the light most favorable to the Plaintiff, a reasonable juror could find that Defendant Johnson acted unreasonably.  Summary judgment on the issue of qualified immunity would be inappropriate here, even under a standard of "arguable" probable cause.

*Malicious Prosecution*

Defendant Hopmayer moves for summary judgment to dismiss Plaintiff's claim of malicious prosecution.  Hopmayer claims that he "was not involved in the investigation at all, except for possibly reviewing the [student] statements" following the rock-throwing incident.  Defendant Hopmayer claims that he never "suggested or requested that Plaintiff be arrested or charged" in connection with the rock-throwing incident, and that no evidence has been presented that he did.

Our Court of Appeals has held that "[i]n order to prevail in an action for malicious prosecution in New York, a plaintiff must show: '1) the initiation of an action by the defendant against [him], 2) begun with malice, 3) without probable cause to believe it can succeed, 4) that ends in failure or, in other words, terminates in favor of the plaintiff.'" *Engel v. CBS*, 145 F.3d 499, 502 (2d Cir. 1998) (citing *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996).

Plaintiff argues that an inference of Hopmayer's involvement in the prosecution could be drawn based on Defendant Johnson's answer to plaintiff's interrogatories, where Johnson stated that Defendant Hopmayer " 'was the only individual present who either conducted or was present during the interviews' of the students interviewed about the incident." *Johnson Answer to Interrogatories, quoted in Plaintiff's Memorandum in Opp.* Plaintiff also testified in his deposition that Defendant Johnson spoke to someone on the phone at the police station while Plaintiff was in custody about Plaintiff's arrest, and addressed the other person as "Aaron." Plaintiff argues that this evidence could allow a reasonable juror to conclude that Defendant Hopmayer encouraged and aided the wrongful arrest.

The evidence presented in the motion is insufficient to show that Hopmayer "initiated" the prosecution of plaintiff, and therefore fails to satisfy the first prong of a malicious prosecution claim. Even if Hopmayer had initially referred the case to SRO Johnson, our Court of Appeals had held that "reporting a crime to law enforcement and giving testimony does not constitute the 'initiation' of a criminal prosecution." *Rothstein v. Carriere* 373 F.3d 275, 293-294 (2d Cir. 2004). The fact that Hopmayer may have known Johnson socially, and may have

been involved with the interviews of student witnesses, is insufficient to establish Hopmayer's

"active role in the prosecution, such as giving advice and encouragement and importuning the

authorities to act." *Rohman v. New York City Transit Auth., 215 F.3d 208, 217 (2d Cir. 2000)*

*(quoting DeFilippo v. County of Nassau, 183 A.D.2d 695, 696, (2d Dep't 1992); Viza v. Town of*

*Greece, 94 A.D.2d 965, 966, (4th Dep't 1983)*.  The alleged phone conversation between Johnson

and Hopmayer  would also not establish that Hopmayer *initiated* the prosecution of Plaintiff.


*Hostile Educational Environment Claims*

Defendant Hopmayer also seeks summary judgment dismissing Plaintiff's claims that

Defendant Hopmayer subjected Plaintiff to a "hostile educational environment" on the basis of

his race, national origin, religion, and protected speech.  Defendant Hopmayer asks for summary

judgment on two theories.  The first is that Plaintiff sued Defendant Hopmayer under Title VI of

the Civil Rights Act of 1964, which cannot be asserted against individual defendants.  Defendant

Hopmayer argues that any claims under 42 U.S.C. §1983 are now subsumed under Title VI and

should be dismissed. The second theory is that there is insufficient evidence that Defendant

Hopmayer in fact knew of Plaintiff's religious or ethnic background before the complaint was

served.


Plaintiff's "hostile educational environment" claims must be dismissed because they

were brought under Title VI, and individuals cannot be sued under that statute.  The relevant

paragraph of the complaint states the following claim:

Defendant Hopmayer... subjected plaintiff to an hostile educational environment on the
basis of his race, national origin and religion and in retaliation for his protected speech in

violation of Title VI of the Civil Rights Act of 1964 and the First Amendment, as made actionable by 42 U.S.C. sec. 1983.

Plaintiff admits that Title VI cannot be used against Defendant Hopmayer individually. Plaintiff claims that he did not sue Defendant Hopmayer "directly" under Title VI, "but rather has sued [him] pursuant to 42 U.S.C. §1983 for violating his federally protected rights to be free from discrimination on the basis of his race and national origin." This argument is undermined by the plain language of the pleading and the fact that there are no non-individual defendants in this action that could have been sued "directly" under Title VI. Additional "hostile educational environment" claims that Plaintiff seeks to bring under §1983 are precluded, because Title VI "contains a sufficiently comprehensive scheme so as to foreclose the use of §1983 to implement its provisions." *Bruneau ex rel. Schofield v. South Kortright Cent. School Dist.,* 163 F.3d 749, 756 (2d Cir. 1998).

In addition, Plaintiff seems to request that the Court construe the hostile educational environment claim, as it relates to religion, as one for violation of Plaintiff's rights to equal protection, stating that "[w]hile the complaint frames plaintiff's religious discrimination claim as a violation of his Title VI rights, the Fourteenth Amendment, and not Title VI, protects Plaintiff from discrimination on the basis of his religion."

Because Hopmayer cannot be sued under Title VI, the hostile educational environment claims as they relate to race and national origin are dismissed. Title VI does not protect against discrimination based on religion, and the Court declines to construe a Fourteenth Amendment

Equal Protection violation claim from the complaint.  Therefore, the hostile educational environment claim based on religion is also dismissed.

Plaintiff also asserts a First Amendment retaliation claim against Hopmayer.  Plaintiff alleges that Hopmayer punished Plaintiff by suspending him for more than five days, in violation of New York State Education Law, in retaliation for Plaintiff's complaints to Ganley about Hopmayer's class comments.  Plaintiff also argues that a reasonable juror could conclude that Hopmayer conspired to have Plaintiff arrested in retaliation for complaining about Hopmayer, with his parents, to the central administration.

The Court has already determined that Plaintiff has failed to offer evidence sufficient for a reasonable juror to conclude that Hopmayer initiated a conspiracy unlawfully to arrest Plaintiff. For the same reasons, the Plaintiff's theory of First Amendment retaliation based on the unlawful arrest fails.

The other theory of First Amendment retaliation is that Hopmayer unlawfully suspended Plaintiff in retaliation for Plaintiff complaining to Ganley. However, the parties do not dispute that the Plaintiff was initially suspended because he was in a physical altercation with another student.  Janet Formisano, a teacher who witnessed the incident, wrote in a report that Plaintiff was the clear aggressor, and that the other student was trying to hold Plaintiff back.  It appears that Hopmayer did not allow Plaintiff to return to school because Plaintiff refused to attend the peer mediation program.  Although this may violate New York Education Law's maximum five

day suspension without a hearing, Plaintiff has not brought a claim for violation of his Due Process rights.  Plaintiff has failed to show sufficient evidence linking this extension of the suspension to his comments allegedly made to Ganley.

**<u>Conclusion</u>**

Defendant Johnson's motion for summary judgment is denied. (Doc. 13). Defendant Hopmayer's motion for summary judgment on all claims is granted. (Doc. 12).  The Court declines at this time to make the finding contemplated by Rule 54(b) Fed.R.Civ.P.

Counsel remaining in the case shall confer with respect to any open discovery issues and arrange for completion.  A final pre-trial conference with the Court shall be held on November 17, 2006 at 9:00 A.M.

X

      X

          X

               X

12

SO ORDERED.

Dated: White Plains, New York
      November 2, 2006

                                        Charles L. Brieant, U.S.D.J.